```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION
```

Michael Marzillo,                     )
                                      )
       Plaintiff,                     )
                                      )
                                      )
    v.                                ) Case 15 CV 1572
                                      )
                                      )
United Auto Workers Local 551; Ford   )
Motor Company; Grant Morton; Alan     )
"Coby" Millender; Greg Poet; and      )
International   Union,    United      )
Automobile,   Aerospace    and        )
Agricultural Implement Workers of     )
America,                              )
                                      )
       Defendants.                    )


## MEMORANDUM OPINION AND ORDER

Plaintiff is an employee of Ford Motor Company and an elected Union Representative of United Auto Workers Local 551 (the "Local Union") who claims that he was denied overtime to which he was entitled under the collective bargaining agreement and a letter of understanding between his employer and the union.[1] His complaint asserts a host of claims against the Local Union; the International Union, United Automobile, Aerospace and

---

[1] In this decision, the "Local Union" refers to the remaining defendant, while generic references to "the union" refer non-specifically to affiliated labor entities such as the UAW National Ford Department and former defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

Agricultural Implement Workers of America; his employer; and several individuals, but I dismissed all but one claim in my Memorandum Opinion and Order of October 6, 2015. The only remaining claim asserts that the Local Union breached its duty of fair representation by failing to "equalize" plaintiff's overtime pay with the overtime other full-time union representatives received.

Before me is the remaining defendant's motion for summary judgment, which I grant for the reasons that follow.

I.

The following facts are undisputed except where noted. I focus on the facts relevant to defendant's motion, assuming familiarity with the additional background set forth in my decision of October 6, 2015.

Plaintiff is a District Committeeman in the Local Union, representing workers in "Skilled Trades Group 1" at the Torrence Avenue Ford plant in Chicago.[2] Another District Committeeman, Steve Denhartog, represents "Skilled Trades Group 2." In all, the Local Union has fourteen District Committeemen at the Torrence Avenue facility, each elected by the members of the specific District or Group he or she represents. District

---

[2] There may be a dispute as to whether plaintiff represents all Skilled Trades employees who are working during his shift, or only those who are in Skilled Trades Group 1. This dispute, if it exists, is immaterial.

2

Committeemen assist their members in various matters, including in the first step of the grievance procedure set forth in the Collective Bargaining Agreement (the "CBA") between Ford and the union.

At the top of the Local Union's representational structure is the Bargaining Chairman, who is elected by and represents the entire local membership. The Bargaining Chairman is the Local Union's chief spokesperson in negotiating local agreements with Ford, and he or she has ultimate authority for representing the Local Union's members in matters involving the CBA. The Bargaining Chairman is also the chief spokesperson for the Local Union in the final local-level step of the grievance procedure. Three Bargaining Unit Committeemen assist the Bargaining Chairman in negotiating local agreements with Ford. Like the Bargaining Chairman, the Bargaining Unit Committeemen are elected by, and represent, the entire local membership, including in the second stage of the grievance procedure.

Art. VI Sec. 13(b) of the CBA sets forth an "overtime formula" for full-time union representatives. *See* 2011 CBA, Bacon Decl. at Exh. A (DN 73 at 8-9).[3] Pursuant to these provisions, Ford provides the Local Union a weekly allotment of overtime hours based on the total number of overtime hours

---

[3] These page numbers refer to the numbers automatically generated by the CM/ECF electronic docket.

worked by employees the previous week. Def.'s L.R. 56.1 Stmt. at ¶ 18; Bacon Decl. at ¶ 29 and Exh. A. The parties refer to the overtime hours provided for in this section as "bank" hours.

Pursuant to a letter of understanding dated January 11, 1995 (the "1995 Letter"), the Bargaining Chairman distributes the bank hours allotted by Ford among the various full-time representatives. The 1995 Letter provides:

> [I]nsofar as practical such overtime opportunities would be rotated by the chairperson [i.e., the Bargaining Chairman] among the representatives, depending upon their specific representation functions and the representation requirements in the unit, with the objective of equalization within reasonable limits over a period of time (e.g., quarterly or semi-annually).

Bacon Decl. at Exh. B (DN 73 at 11).

On May 13, 2012, Ford implemented an Alternative Work Schedule ("AWS") for Skilled Trades, under which employees work twelve-hour shifts, alternating three days one week and four days the next. Def.'s L.R. 56.1 Stmt. ¶ 26; Bacon Decl. at ¶ 19 (DN 73 at 3).[4] Appendix W to the CBA provides that the AWS "base schedule" is thirty-six hours a week for three day weeks and forty-eight hours a week for four day weeks. *Id.* at Exh. C (DN 73 at 14). Appendix W further provides that after the "base

---

[4] Plaintiff disputes this fact, stating that some of the workers he represents "work a 40 hour week and some work four 10 hour days." Marzillo Aff. at ¶ 30. He does not explain, however, how this dispute is material to the arguments he raises in opposition to defendant's motion.

4

schedule" thresholds are met, any hours worked over ten in a day are considered overtime and paid at a premium rate. *Id*.

Because Skilled Trades employees work twelve-hour days, each day that a District Committeeman for Skilled Trades works, he or she receives two hours of overtime for his or her regularly scheduled shift. Def.'s L.R. 56.1 Stmt. ¶ 22. These overtime hours are deducted from the overtime "bank" and are considered for the purpose of overtime equalization. *See id.*; Bacon Decl. at ¶¶ 40, 42 (DN 73 at 5); Dunn Decl. ¶¶ 11-12 (DN 75 at 2).

Defendants' evidence reveals that when overtime hours are thus calculated and accounted for, plaintiff worked the second most overtime of all full-time District Committeemen each year from 2011 to 2014. The evidence further reveals that in each quarter of 2014 and 2015, plaintiff worked either more overtime hours than, or an equal number of overtime hours to, Steve Denhartog, the District Committeeman for Skilled Trades Group 2. Def.'s L.R. 56.1 Stmt. at ¶¶ 41-48; Dunn Decl. at ¶¶ 23-25 and Exhs. 2-4; Bacon Decl. at ¶¶ 46-47 and Exh. D-G.

Plaintiff does not dispute that he regularly receives two hours of overtime for each of his regularly scheduled twelve-hour shifts. He contends, however, that these overtime hours should not be "charged" against the overtime bank or considered for the purpose of equalizing his "bank" overtime with that of

5

other full-time union representatives. *See* Marzillo Aff. at ¶ 15 (DN 89-1). Plaintiff further argues that the 1995 Letter requires the Bargaining Chairman to equalize his overtime not only with that of other District Committeemen, but with *all* elected and appointed full-time representatives, with the exception of the Bargaining Chairman himself.

II.

Actions such as this, in which an employee alleges a breach of the CBA in conjunction with a breach of the union's duty of fair representation ("DFR"), are known as "hybrid" actions under § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. *DelCostello v. Int'l. Broth. of Teamsters*, 462 U.S. 151, 165 (1983). *See also Vaca v. Sipes*, 386 U.S. 171, 186-87 (1967). The Court explained in *DelCostello* that the two claims in a hybrid action are "inextricably interdependent," which means that to prevail on either, a plaintiff must establish the elements of both. 462 U.S. at 164-65. Indeed, the Seventh Circuit has repeatedly confirmed that in hybrid suits, the breach of contract claim and the DFR claim are "interlocked: neither claim is viable if the other fails." *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1241 (7th Cir. 1997) (citation and internal quotation marks omitted). *See also Neal v. Newspaper Holdings, Inc.*, 349 F.3d 363, 368 (7th Cir. 2003) (same). As the court explained in *White v. General*

6

*Motors*, "[w]hen an employee's underlying contractual claim lacks merit as a matter of law, the employee cannot complain that the union breached its duty of fair representation in failing to process his or her grievance." 1 F.3d 593, 595 (7th Cir. 1993) (citing *Souter v. Int'l. Union, United Auto., Aerospace and Agr. Implement Workers of America, Local 72*, 993 F.3d 595, 598 (7th Cir. 1993).

Because in the typical hybrid case, the plaintiff seeks to enforce the CBA against the employer, who is alleged to have breached the CBA by, for example, terminating the plaintiff in violation of its terms, the Seventh Circuit has, in some cases, suggested that a viable contract claim *against the employer* is required to maintain a viable DFR claim under § 301. *See, e.g., Neal*, 349 F.3d at 368 ("In order for a plaintiff to prevail in such an action, he must have a meritorious claim against both the union and the employer."); *see also Crider*, 130 F.3d at 1241. As noted above, I previously dismissed plaintiff's claim against his employer, explaining that plaintiff's theory that Ford breached the CBA and 1995 Letter by failing to "enforce" overtime equalization was deficient as a matter of law because the face of those agreements establish that Ford had no duty (nor indeed any authority) to do so. *See* 10/06/15 Mem. Op. at 10 (DN 63). Accordingly, at first blush, it may appear that *Neal*, *Crider*, and similar authority compel the dismissal of

7

plaintiff's DFR claim for lack of jurisdiction, since DFR claims untethered to a claim for breach of a CBA are outside the scope of § 301. *Copeland v. Penske Logistics LLC*, 675 F.3d 1040, 1044 (7th Cir. 2012) (claim against union that did not allege violation of CBA "is not a claim for breach of contract and therefore can't be pursued under § 301. It belongs to the Labor Board alone.").

While it is true that plaintiff no longer has a viable claim against his employer, I am satisfied that my jurisdiction is secure. In *Lewis v. Local Union No. 100 of Laborers' Intern. Union of North America, AFL-CIO*, 750 F.2d 1368 (7th Cir. 1984), the court considered whether an employee's claim against the union for the union's breach of the CBA was cognizable under § 301 and determined that the issue had "already been decided in the affirmative by the Supreme Court." *Id*. at 1373 (citing *Amalgamated Assoc. of Street, Electric Railway & Motor Coach Employees v. Lockridge*, 403 U.S. 274 (1971); *Humphrey v. Moore*, 375 U.S. 335 (1964); and *Smith v. Evening News*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). In *Lewis*, the court concluded that the fact that the employee made no claim against the employer was "immaterial," and held that so long as the contractual provisions the employee sought to enforce were "intended to confer a benefit upon" the employee—which all

evidence suggests is the case here—he could maintain a hybrid § 301 action with only the union as the defendant. *Id.* at 1374.

The viability of plaintiff's claim in theory, however, is not enough survive summary judgment. At this stage, plaintiff must come forward with evidence that, if believed by a jury, establishes each of the elements necessary to prevail on that theory. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). As explained below, plaintiff has not done so because the evidence on which he relies does not reasonably suggest that the manner in which the Bargaining Chairman distributed bank overtime hours amounted to a breach of the Local Union's duty of fair representation.

In *Vaca*, the Court held that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." 386 U.S. at 190. As noted above, defendant has proffered evidence: 1) that plaintiff's overtime was commensurate with the overtime of other District Committeemen, and, in fact, was consistently among the highest of all District Committeemen at the Torrence Avenue plant; and 2) that the Local Union's practice of "charging" plaintiff's regularly scheduled overtime hours to the weekly overtime bank allotted by Ford was consistent with how defendant allocated overtime to other full-time District Committeemen at the

9

Torrence Avenue plant, and was also consistent with the practice of other local unions governed by the CBA and with Ford's overtime accounting. *See* Bacon Decl. at ¶¶ 41-42 and Exhs. D-J (DN 73); Dunn Decl. at ¶¶ 18, 19, 22 and Exhs. 2-6 (DN 75); Shea Decl. at ¶¶ 9-12 (DN 95).

Plaintiff purports to dispute this evidence, stating that he requested documentation to substantiate defendant's overtime calculations "but was advised that the information was contained in the DROT reports of some 1,500 pages provided by the Union in discovery." Pl.'s L.R. 56.1 Resp. at ¶¶ 42-48. Plaintiff further objects that the records are "incomplete and Plaintiff cannot confirm or deny such calculation[s.]" *Id*. These responses are inadequate to defeat summary judgment. If plaintiff was unable to identify the relevant documents in defendant's production, he was entitled to serve interrogatories and/or to depose a witness with knowledge of the documents to help identify and understand them. Moreover, if he believed the records were incomplete, he should have moved to compel production of whatever he believed was missing.[5] Finally, if

---

[5] Actually, plaintiff did file a motion to compel before the Magistrate Judge, in which he sought documents relating to overtime tracking and interrogatory answers "designed to elicit the methodology used to calculate the bank of overtime hours granted to the union on a weekly basis and to whom the bank of hours is allocated." Mot. to Compel at 5 (DN 81). The motion was later stricken as moot, presumably at plaintiff's request. *See* DN 88.

plaintiff was truly unable to obtain evidence necessary to oppose defendant's motion, he was entitled to pursue the alternatives available under Fed. R. Civ. P. 56(d). What he cannot do is proceed to a trial without affirmatively identifying evidence raising a genuine factual dispute. *See Liberty Lobby* 477 U.S. at 250.

Plaintiff's insistence that defendant improperly considered his regularly scheduled overtime hours as part of his bank allotment for the purpose of equalization, and that defendant improperly equalized plaintiff's overtime hours only with the hours of other District Committeemen rather than with those of *all* full-time representatives regardless of their functions, falls short on several fronts. To begin, plaintiff points to no evidence suggesting that defendant did not consider other full-time representatives' regularly scheduled overtime for purposes of equalization, undermining his claim that he was targeted for worse treatment. Indeed, plaintiff's "understanding that these hours are not considered 'overtime' hours by Ford because they are part of my Regular Day of Work" is not supported by any competent evidence. Plaintiff explains:

> I know this because Ford Motor Company keeps records of my overtime and they do not consider the premium hours as overtime. Additionally, I have represented members of the Skilled Trades Group in grievances I have filed on their behalf alleging that they have not been equalized with other Skilled Trades Group members in the assignment of available overtime hours. ... In

11

>such grievance proceedings it has always been the
>position of Ford management that "overtime" hours are
>only calculated when it is not a regular day of work
>(RDW) for the individual or when the overtime is
>worked in excess of the AWS regular schedule if it is
>a regular day of work.

Marzillo Aff. at ¶ 15 (DN 89-1). Plaintiff does not identify the records he relies on, nor does he explain how their content supports his position. Moreover, even assuming that plaintiff has personal knowledge, based on his participation in employee grievances, of how Ford calculates overtime for its workers, those calculations have no apparent relevance to how Ford allocates overtime to full-time union representatives pursuant to Art. VI Sec. 13(b) of the CBA. On that specific issue, defendant offers the declaration of Johanna Shea, Ford's HR Associate, Union Relations, who states:

>Ford deducts the Union bank hours for any hours worked
>by a full-time Union Representative over ten (10)
>hours in one day when the Union Representative works
>on an Alternative Work Schedule that is greater than
>10 hours or in excess of his/her base schedule. Bank
>hours are deducted anytime a full-time Union
>Representative works "overtime" (over 10 hours in one
>day) within his or her capacity as Union
>Representative. This practice is consistent with how
>it is done at other UAW-represented Ford Assembly
>Plants.

Shea Decl. at ¶ 9 (DN 95).

Finally, even assuming that plaintiff's view that the Bargaining Chairman was required to equalize bank overtime hours among *all* full-time representatives, regardless of their

12

function, is a plausible construction of the 1995 Letter, notwithstanding the letter's express qualification that the Chairman take into account the representatives' "specific representation functions and the representation requirements in the unit," plaintiff must do more than assert an alternative interpretation of defendant's obligations. Indeed, he must establish that the Local Union's distribution of bank overtime is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. As just explained, the only competent evidence in the record suggests the contrary: that defendant calculated all full-time representatives' bank hours in a similar manner, and that it distributed and accounted for them in a way that was consistent with the terms of the 1995 Letter, with the practice of other local unions governed by the CBA, and with Ford's overtime accounting. Moreover, the evidence establishes that plaintiff consistently received at least as many bank hours as his peers with similar functions. In short, there is simply no evidence that could persuade a reasonable jury to find that the Local Union breached its duty of fair representation to plaintiff by failing to equalize his overtime.

Finally, I note that although plaintiff's complaint also alleges that defendant breached its duty of fair representation by deliberately mishandling his grievances as part of a campaign to punish and retaliate against him for his failure to support

Ford's proposed CBA in October of 2011, he has not presented any evidence of how those grievances were handled, or any other factual support for this theory beyond his own conjecture.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 20, 2016